N. R. JONES, Sheriff, v. SAMUEL P. ARRINGTON.   ·

" *Back-Taxes*"—*Relief of Sheriff—Legislative Power.*

It is competent for the legislature to empower sheriffs to collect "back-taxes;" and where, as here, the sheriff has himself made a full settlement and gone out of office, the delinquent tax payer's liability to him is not thereby extinguished.   *Taylor v. Allen,* 67 N. C., 346, commented on.

(*Railroad* v. *Com'rs of Alamance,* 82 N. C., 259; *Morton* v. *Ashbee,* 1 Jones, 312; *Whitehurst* v. *Dey,* 90 N. C., 542; *Hinton* v. *Hinton,* Phil., 410; *Taylor* v. *Allen,* 67 N. C., 346, cited.)

CIVIL ACTION, tried at Fall Term, 1884, of WARREN Superior Court, before *Gudger, J.*

This action was brought for the collection of taxes alleged to be due the plaintiff from the defendant for the years 1873 and 1880 inclusive, under the act of 1883, ch. 79, entitled " an act for the relief of Nathaniel R. Jones, former sheriff of Warren county."   The facts material to an un-

derstanding of the point decided are stated in the opinion.
The plaintiff appealed.

*Messrs. W. A. Montgomery* and *Battle & Mordecai,* for plaintiff.
*Mr. Joseph B. Batchelor*, for defendant.

SMITH, C. J.   The plaintiff had filled the successive terms
of the office of sheriff of Warren county from the year
1873 until the first Monday in September, 1881, when his
last term expired, and had during this period regularly ac-
counted for and paid over to the proper authorities the
taxes, state and county, with the collection of which he was
charged.   For his relief at the session of the general assem-
bly, held in the year 1883, an act was passed, the first sec-
tion of which is in these words:

"That Nathaniel R. Jones, former sheriff of Warren
county, be, and he is hereby authorized, to collect the arrears
of taxes due the said Nathaniel R. Jones for the years 1873
to 1881, (designating the several years in words) and for
that purpose he may appoint one or more persons to make
said collections, under the same rules and regulations as are
prescribed by law for the regular collection of taxes, and
the power and authority hereby granted shall cease on the
1st day of January, 1884."

The next section directs the mode of procedure when the
demand against the alleged delinquent tax payer is resisted
on the ground that the tax has been paid, and the sheriff's
receipt as evidence thereof has been lost, which has been
pursued in the present case, while the remaining section
extends the provisions of the act over so much of the ter-
ritory of Warren as formed a part of that collection district,
and was detached to make the county of Vance.

Upon the trial in the superior court, to which the cause
commencing before a justice of the peace had been removed
by appeal, the judge expressed the opinion that the en-

actment was not warranted by the constitution, and was consequently inoperative, and therefore the plaintiff submitted to a nonsuit and appealed.

We have before us upon the record a single question, and this alone we propose to consider.

Is the act unauthorized by the constitution?

In the case the *N. C. R. R. Company* v. *Commissioners of Alamance*, 82 N. C., 259, the plaintiff impeached the validity of an enactment which provided for the collection of taxes upon unlisted property liable thereto, for the intervening years between 1869 and 1876 inclusive, as an invasion of vested immunities not authorized by the constitution. In passing upon this contention the court say:

"The retrospective features of the act are not fatal to its validity. It does not undertake to impose new burdens or additional liabilities upon the companies, but to pursue and charge the taxable property which they possessed and which has escaped its share of the common burdens. It seeks nothing more. No vested rights are involved; no wrong done by the means employed to correct a common error, and prevent an unjust and unintended exemption."

Again in *Morton* v. *Ashbee*, 1 Jones, 312, in reference to an act which authorizes the administrator of a deceased sheriff to proceed with the collection of the arrears of taxes due for the three preceding years, in meeting a similar objection, BATTLE, J., speaking for the court, says: *"We are clear as to the power of the legislature to pass the act in question, and that it gave him the right to collect as general administrator."*

So in the case first cited the court say in regard to such enactments: "There are numerous instances in our own legislation where the time for the collection of unpaid taxes has been extended to those due for many years previous, for the indemnity and reimbursement of the collecting officer and the sureties on his official bond and their legal repre-

sentatives, *without question*, so far as we know, as to the incompetency of the legislature to make the enactment."

Our attention was not then called to the case of *Morton* v. *Ashbee, supra,* as containing an actual ruling upon the point.

Numerous special acts for the relief of sheriffs in extending their power, to collect taxes in arrear, will be found in the legislation of 1881 and 1883 and also at each of those sessions a general and comprehensive enactment conferring upon all these officers authority to collect unpaid taxes for which they have accounted in their several settlements. Acts 1881, ch. 93; Acts 1883, ch. 30.

It would thus seem that the possession of the power to remove the obstruction arising from the lapse of time, and again exposing the delinquent tax-payer to the remedies provided for the enforced payment of what is due, has been so long exercised, and promptly vindicated by judicial decision when denied, that it must now be settled beyond the reach of controversy.

The argument for the appellee is that the collector's settlement is an extinction of the tax-payer's liability, prolonged only for one year, and forever gone if not enforced during this period, and beyond the competency of the law-making power to revive. This reasoning is wholly irreconcilable with the adjudications and the practice.

The public taxes, state and county, under the law now in force (Acts 1881, ch. 117), become due and payable, the former on the second Monday in January (section 41), the latter on the first Monday in February (section 45), after the first Monday in September of the preceding year, when the tax list goes into the sheriff's hands for collection (section 24). He, and in case of his death the sureties to his official bond are allowed one year, and no longer, from the day prescribed for his settlement and payment of the state taxes, to finish the collection of all taxes (section 50).

While the time for the settlement has been varied and

fixed at different periods, in all the revenue legislation, the relations of these provisions, so far as we have examined, remain; and the settlements are required to be made before the time expires in which the officer is allowed to proceed with the collection.   Such a provision is found in the revenue legislation in the Revised Statutes, ch. 102, § 44, in the Revised Code, ch. 99, § 84, and in Bat. Rev. ch. 102, § 50, in all of which the officer is allowed a year after settlement to conclude his collection.

Some countenance is afforded to the suggestion that the extension of the time for collection for one year after the officer has made his settlement is in effect a limitation put upon the enforcement of the tax-payer's obligation, and when the time is past that liability cannot be revived by what is said by RODMAN, J., delivering the opinion in *Taylor* v. *Allen*, 67 N. C., 346.

" If we regard the sheriff's power to sell as a power given on the condition that it be exercised within a certain time, which failed to be acquired by not selling within the time, it would seem clear that the legislature could not by the private act of February, 1861, give the sheriff a power to sell the land of the defendant. It would be to take his property without due process of law.   And if we consider the requirement to sell by the first of October as only a statute of limitations, yet, although a legislature may prolong a period of limitation, or suspend the running of the statute before the remedy is wholly barred, it cannot lawfully do so afterwards."

The sheriff's deed was here declared to be ineffectual in passing title to the land, in consequence of his disregard of essential requirements of the law prescribing his course of proceeding, even supposing the power to sell had been prolonged and could be exercised, and hence the remarks we have quoted, made *arguendo*, were not necessary to the decision of the cause.   No authority was referred to, nor the

9

contrary ruling in *Morton* v. *Ashbee*, noticed, nor weight given to the frequent instances in which the general assembly have removed the restraint upon the tax collector and enabled him to prosecute his remedy against delinquents, as an interpretation of constitutional power, and we can only allow to the opinion the weight due to the learned judge who expressed it.

But aside from the antagonism of opposing authority, we do not concur in the argument that assimilates the case to an enactment that attempts to revive a demand that has become barred by the statute of limitations, the repugnance of which to the constitution of the United States has been recently declared in *Whitehurst* v. *Dey*, 90 N. C., 542.

Such an enactment does not operate upon the debt or liability of the tax payer, which remains as before, but is simply a removal of a restriction imposed upon the collector upon grounds of public policy in cases in which it is deemed proper to grant the indulgence. Similar legislation was sustained in *Hinton* v. *Hinton*, Phil., 410, which extended the time in which a widow was allowed to enter her dissent to the testator's will after the expiration of the six months prescribed by law.

This was more obnoxious retroactive legislation, since it disturbed the legal relations of the widow towards those entitled to the devised estate.

In our case a mere restriction is removed from a public officer so that he may enforce a subsisting, not barred, obligation incurred by the tax payer under the operation of a revenue law.

But whatever force there might be in the argument against the right of the general assembly thus to subject the tax payer to the demands of the collector after the protection afforded under the law, if the question were still open to controversy, we deem it settled by adjudication and prac-

tice for too long a period for us now to review it and disturb the rulings.

There is error and must be a new trial. It is so adjudged and this will be certified.

Error.                                              *Venire de novo.*